COURT OF CHANCERY

 OF THE

 STATE OF DELAWARE

|Lori W. Will | |Leonard L. Williams Justice |
|Vice Chancellor | |Center |
| | |500 N. King Street, Suite |
| | |11400 |
| | |Wilmington, Delaware |
| | |19801-3734 |

 Date Submitted: May 3, 2022
 Date Decided: May 5, 2022

|A. Thompson Bayliss, Esquire |Raymond J. DiCamillo, Esquire |
|Michael A. Barlow, Esquire |Kevin M. Gallagher, Esquire |
|Eliezer Y. Feinstein, Esquire |Daniel E. Kaprow, Esquire |
|Abrams & Bayliss LLP |Caroline M. McDonough, Esquire |
|20 Montchanin Road, Suite 200 |Richards, Layton & Finger, P.A. |
|Wilmington, Delaware 19807 |920 North King Street |
| |Wilmington, Delaware 19801 |
|Peter J. Walsh, Jr., Esquire | |
|Matthew F. Davis, Esquire | |
|Abraham C. Schneider, Esquire | |
|Patrick A. Lockwood, Esquire | |
|Potter Anderson & Corroon LLP | |
|1313 North Market Street, 6th Floor | |
|Wilmington, Delaware 19801 | |
| | |

 RE: In re Aerojet Rocketdyne Holdings, Inc.
 C.A. No. 2022-0127-LWW

Dear Counsel:
 This decision resolves plaintiff Warren G. Lichtenstein’s motion to
compel. He seeks documents withheld by the defendants and their outside
counsel on the basis of the Aerojet Rocketdyne Holdings, Inc.’s (“Aerojet”
or the “Company”) privilege. Lichtenstein and his three fellow plaintiffs
(who join in the motion) comprise half of Aerojet’s board of directors (the
“Board”) and are director nominees on a slate advanced by a Lichtenstein-
affiliated entity in an ongoing proxy contest. The four defendants
comprise the other half of the Board and are nominees on a competing slate.

 This court previously entered a temporary restraining order preventing
either Board faction from acting unilaterally on the Company’s behalf or
using its resources in connection with the upcoming director election.
Lichtenstein’s motion asks that the neutrality principles underlying the
court’s order be extended to the use of the Company’s privilege. It raises
an unusual question: where two halves of a deadlocked board are competing
in a proxy contest, can one half assert the corporation’s privilege against
the other? I conclude that, in these circumstances, it cannot.
 For the reasons explained below, the plaintiffs are entitled to
discovery of certain of the Company’s privileged information. The
defendants have no greater claim to the Company’s privilege than the
plaintiffs, who are joint clients of Company counsel. The plaintiffs and
defendants are adverse to one another—at least in the context of the proxy
contest. But it does not follow that one faction of the Board is adverse
to Aerojet because the other is aligned with management.
 The even division of the Board means that neither side can benefit
from the Company’s resources—including its privilege—to the exclusion of
the other. The motion to compel is therefore granted.
 I. BACKGROUND
 Plaintiffs Lichtenstein, James R. Henderson, Audrey A. McNiff, and
Martin Turchin filed this litigation against defendants Eileen P. Drake,
Thomas A. Corcoran, Kevin P. Chilton, and Lance W. Lord on February 7,
2022.[1] Lichtenstein is Aerojet’s Executive Chairman and a major Aerojet
stockholder through Steel Partners Holdings L.P. (together with its
affiliates, “Steel”).[2] Drake is the Company’s Chief Executive Officer
and President.[3]
 Tensions between Lichtenstein and Drake purportedly developed in late
2020 while the Company was negotiating a merger agreement with Lockheed
Martin Corporation. Drake alleged that Lichtenstein—who wanted Aerojet to
approach other possible bidders—was “laying the ground work . . . to remove
[her] as CEO so he [could] pursue his strategy and personally benefit
financially.”[4] On October 13, 2021, the Board formed a committee
consisting of the other six members of the Board (the “Non-Management
Committee”) to investigate Drake’s allegations.[5]
 On January 25, 2022, the Federal Trade Commission sued to block the
Company’s merger with Lockheed.[6] In the days following, the Board—facing
the strong possibility that the merger would not close and a fast-
approaching February 5 advance notice bylaw deadline—was unable to reach an
agreement on the composition of a slate of director nominees for the 2022
annual meeting.[7]
 On January 28, 2022, Steel delivered a notice to the Company
nominating seven director candidates for election.[8] Steel’s slate
included four incumbent members of the Board—the plaintiffs in this
litigation.[9] The Company’s six independent directors met to attempt to
agree to a compromise slate in late January but never reached a final
agreement.[10] Steel amended its Schedule 13D on February 1, 2022 to
disclose the nomination of its slate.[11]
 Later that day and on February 2, 2022, the defendants, without
consulting the rest of the Board, caused the Company to issue a press
release and submit related public filings signed by the Company’s general
counsel.[12] The press release disclosed the Non-Management Committee’s
investigation and purported to speak on behalf of the Company, expressing
“disappointment” with Lichtenstein’s decision to launch a “disruptive”
proxy contest.[13] On February 3, 2022, the Company’s longtime outside
counsel, Gibson Dunn & Crutcher LLP, writing in their “capacity as
litigation counsel” for Aerojet, told the plaintiffs that their actions in
connection with the proxy contest were “bad faith” breaches of fiduciary
duty.[14]
 The plaintiffs’ Verified Complaint for Declaratory Judgment followed
on February 7, 2022, along with motions to expedite and for a temporary
restraining order.[15] The Complaint seeks two declaratory judgments
intended to maintain the Company’s neutrality with respect to the proxy
contest: the first stating that Aerojet officers, directors, and employees,
among others, cannot act on the Company’s behalf without Board
authorization; and the second stating that such individuals cannot take
actions on the Company’s behalf supporting either slate of director
nominees so long as the Board remains split.[16]
 On February 10, 2022, Gibson Dunn sent an engagement letter to the
defendants informing them that Aerojet had agreed to be jointly represented
by the firm and to pay Gibson Dunn’s fees in connection with the joint
representation.[17] The defendants signed the letter over the coming
days.[18] On February 11, 2022, the defendants—individually and
derivatively on behalf of Aerojet—and (purportedly) the Company brought
suit against the plaintiffs. Gibson Dunn served as litigation counsel to
the Aerojet and the defendants.[19] The defendants voluntarily dismissed
their claims without prejudice on March 7, 2022.[20]
 On February 15, 2022, I granted the plaintiffs’ motions to expedite
and for a temporary restraining order.[21] The temporary restraining order
required the Company and its advisors to remain neutral regarding issues
over which the Board was divided.[22] The order also required Gibson Dunn
and Richards, Layton & Finger, P.A. to withdraw as Company counsel in
connection with this litigation.[23] After a motion to enforce the
temporary restraining order was filed and granted, those firms sought leave
to withdraw as counsel for Aerojet on March 9, 2022.[24] The motion to
withdraw was granted on April 20, 2022, following considerable delay in the
retention of neutral counsel for the Company.[25]
 The present motion arises from 46 document requests the plaintiffs
served on the defendants and a subpoena duces tecum served on Gibson
Dunn.[26] After the defendants and Gibson Dunn served their written
responses and objections,[27] Lichtenstein sought confirmation from the
defendants that they would not seek to invoke the Company’s attorney-client
privilege against him “other than to protect (a) confidential
communications internal to the Non-Management Committee and its counsel; or
(b) confidential communications regarding the substance of the internal
investigation of Mr. Lichtenstein after the formation of the Non-Management
Committee on October 13, 2021.”[28] The defendants rejected that request
on April 20.[29] Gibson Dunn also confirmed that, in its view, the
plaintiffs’ subpoena sought documents and communications protected by the
attorney-client privilege, which it could not waive.[30]
 Lichtenstein filed this motion to compel on April 21, 2022.[31] He
seeks an order requiring that the defendants and Gibson Dunn to produce
documents withheld on the basis of Aerojet’s privilege and that the Company
direct its advisors to produce any information they are currently
withholding on the basis of the Company’s privilege.[32] Two broad
categories of documents are in play: (1) documents dated
before October 13, 2021, when a special committee was formed to investigate
Mr. Lichtenstein’s alleged misconduct, and (2) documents dated after
October 13, 2021. Henderson, McNiff, and Turchin filed a joinder to
Lichtenstein’s motion on April 22, 2022.[33]
 Lichtenstein contends that, as a sitting director, his access to the
Company’s privileged information is on equal footing with the rest of the
Board unless it falls within the narrow confines of the Non-Management
Committee’s investigation. His position relies on his broad information
rights as a director and principles of corporate neutrality.
 The defendants argue that the plaintiffs are not entitled to the
Company’s privileged information because they seek it in furtherance of
their proxy contest rather than their fiduciary duties. The defendants
further aver that the plaintiffs became adverse to the Company, such that
they could no longer expect to be within its privilege, by no later than
the time that Steel delivered its nomination notice. They also contend
that—even if the plaintiffs were given access to Company privileged
information—the court should deny discovery into communications subject to
a joint privilege between the Company and defendants.
 II. LEGAL ANALYSIS
 Under Delaware law, a corporation generally cannot assert the attorney-
client privilege “to deny a director access to legal advice furnished to
the board during the director’s tenure.”[34] A director’s right to
information is “essentially unfettered in nature”[35] and includes “equal
access to board information.”[36] The right arises from a director’s duty
“to protect and serve the corporation.”[37]
 There are three recognized limitations on a director’s right to
access:
 First, a “director’s right can be diminished by an ex ante
 agreement among the contracting parties.” Second, the board can
 form a special committee excluding a director, and that
 committee “would [be] free to retain separate legal counsel, and
 its communications with that counsel would [be] properly
 protected.” Third, privileged information can be withheld from
 a director “once sufficient adversity exists between the
 director and the corporation such that the director could no
 longer have a reasonable expectation that he was a client of the
 board’s counsel.”[38]

 The first limitation is not at issue here. No ex ante agreement
limited the Aerojet directors’ access to information.
 The second limitation is implicated but not in serious dispute. It
allows a board committee formed with the excluded director’s knowledge to
engage in privileged communications with its counsel, “at least to the
extent necessary for the committee’s ongoing work, such as conducting a
special committee investigation or negotiating an interested
transaction.”[39] Lichtenstein acknowledges that he is not entitled to
confidential communications post-dating the Non-Management Committee’s
formation on October 13, 2021 that concern the substance of its
investigation. And the defendants do not meaningfully argue that he is not
entitled to communications created, sent, or received before that date.
There is no indication that Lichtenstein had reason to believe that he
would be the subject of a Company investigation before the Committee’s
formation.[40] Instead, the defendants’ arguments concerning pre-October
13, 2021 documents concern focus—unpersuasively—on relevance.[41]
 The parties’ disagreement centers on whether the adversity limitation
provides grounds for privileged documents and communications created after
October 13, 2021 (excluding those revealing the substance of the
investigation) to be withheld from the plaintiffs. Application of the
adversity limitation “is assessed in view of the reasonableness of a
director’s own expectations.”[42] According to the defendants, the
plaintiffs could not have reasonably expected to remain clients of the
Company’s counsel after Steel delivered its January 28, 2022 notice of
intent to nominate a slate of directors.[43]
 The defendants assert that the plaintiffs are adverse to the Company
because of their alignment with Steel, which they paint as an activist
investor engaged in a takeover attempt. Yet each of the competing slates
includes four incumbent directors. One includes the Company’s Executive
Chairman and the other its Chief Executive Officer. Neither serves as the
Company’s slate. Why one slate should be considered hostile to the Company
and the other friendly is unclear.
 It is obvious that the plaintiffs and defendants have developed some
adversity toward one another. But that adversity is not to the Company.
Setting aside the substance of the investigation, both sets of directors
remained entitled to rely on the Company’s in-house and outside counsel for
legal advice as joint clients.[44]
 It would also defy the principles animating 8 Del. C. § 141(a) to find
that half of a board faction can rely on its association with management to
benefit from the protections of the company’s legal advice to the exclusion
of their fellow directors. Management of a Delaware corporation cannot
unilaterally decide which directors will receive which information.[45] In
In re WeWork, management decided to withhold privileged information from a
special committee.[46] Chancellor Bouchard explained that the application
of the adversity limitation did not apply because “the [corporation’s]
governing body—the Board—made no decision to withhold the Company’s
privileged information.”[47]
 It follows that the defendants’ alignment with Aerojet management
cannot provide them with a greater claim to the Company’s privilege than
the plaintiffs. As this court has previously explained, the defendants
cannot “co-opt the company’s resources” to further a campaign against the
plaintiffs’ proxy contest.[48] “The privilege exists for the benefit of the
corporation—not to any particular corporate constituency,” including an
individual director.[49]
 The defendants further contend that the plaintiffs are not entitled to
any discovery related to Gibson Dunn’s joint representation of Aerojet and
the defendants in connection with this litigation. That representation was
allegedly entered into because “Aerojet [] agreed to such joint
representation.”[50]
 There are several problems with that argument. As an initial matter,
it would only apply after February 11, 2022 (the date the first defendant
signed the agreement) at the earliest—four days after the plaintiffs’
complaint and TRO motion were filed and four days before the TRO was
granted.[51] More crucially, there is a serious question of who could have
validly authorized the joint defense agreement on Aerojet’s behalf given
the context of the representation and the lack of Board approval.[52]
 But providing the plaintiffs access to advice delivered to both
Aerojet and the defendants would not constitute a waiver in any event.
Again, the plaintiffs—as incumbent directors—are within the Company’s
privilege and have access to legal advice rendered to the corporation. The
plaintiffs retained the right to the legal advice Gibson Dunn delivered to
the Company at least until the landscape changed on March 9, 2022, when
Gibson Dunn moved for leave to withdraw as Aerojet’s counsel. The Delaware
Rules of Evidence provide that “no privilege” exists for communications
“relevant to a matter of common interest between or among [two] or more [of
a lawyer’s] clients if the communication was made by any of them to a
lawyer retained or consulted in common, when offered in an action between
or among any of the clients.”[53]
 * * *
 For these reasons, the motion to compel is granted. I encourage the
parties to discuss ways to continue to preserve the Company’s privilege in
advance of trial. Of course, the parties are bound to treat the
information as confidential pursuant to their fiduciary duties to Aerojet.
But an additional tier to the confidentiality order in this case or a
proposed order pursuant to Delaware Rule of Evidence Rule 510(f) may be
useful.[54]
 Sincerely yours,
 /s/ Lori W. Will

 Lori W. Will
 Vice Chancellor

cc: All counsel of record (by File & ServeXpress)
-----------------------
[1] Verified Compl. for Declaratory J. (“Compl.”) ¶¶ 36-39, 41-44 (Dkt. 1).

[2] Id. ¶ 36. More specifically, Lichtenstein is the Executive Chairman of
Steel Partners Holdings GP Inc., the general partner of Steel Partners
Holdings L.P., which held roughly 5.5% of Aerojet’s outstanding common
stock through an indirect subsidiary when the Complaint was filed. Id.

[3] Id. ¶ 41.

[4] Id. ¶¶ 14-15, 18-19.

[5] Id. ¶¶ 18-19; see Pl. Warren G. Lichtenstein’s Mot. to Compel (“Mot. to
Compel”) Ex. I (Dkt. 140); Mot. to Compel ¶ 18.

[6] Compl. ¶ 20.

[7] Id. ¶¶ 21-24.

[8] Id. ¶ 25.

[9] Id.

[10] Id. ¶¶ 26-27.

[11] Id. ¶ 28.

[12] Id. ¶ 74.

[13] Id. ¶ 75.

[14] Id. ¶ 78; Compl. Ex. A.

[15] Dkt. 1.

[16] Compl. ¶¶ 95, 100.

[17] Defs.’ and Non-Party Gibson Dunn & Crutcher LLP’s Opp’n to Pl. Warren
G. Lichtenstein’s Mot. to Compel (“Defs.’ Opp’n”) Ex. 1 (Dkt. 160).

[18] Id.

[19] C.A. No. 2022-0146-LWW, Dkt. 1.

[20] Dkt. 55.

[21] Dkt. 38.

[22] Temporary Restraining Order ¶ 2 (Dkt. 41).

[23] Id. ¶ 7.

[24] Dkts. 70, 96.

[25] Dkt. 133.

[26] Dkts. 53, 66; see Mot. to Compel Ex. H.

[27] Dkt. 91; Mot. to Compel Ex. L.

[28] Mot. to Compel Ex. I.

[29] Mot. to Compel Ex. K.

[30] Mot. to Compel Ex. N.

[31] Dkt. 140.

[32] Mot. to Compel ¶ 13.

[33] Dkt. 143.

[34] Moore Bus. Forms, Inc. v. Cordant Hldgs., 1996 WL 307444, at *4 (Del.
Ch. June 4, 1996).

[35] Schoon v. Troy Corp., 2006 WL 1851481, at *1 n.8 (Del. Ch. June 27,
2006).

[36]  Moore Bus. Forms., 1996 WL 307444, at *5.

[37] Henshaw v. Am. Cement Corp., 252 A.2d 125, 128 (Del. Ch. 1969); see
SerVaas v. Ford Smart Mobility LLC, 2021 WL 5226487, at *3 (Del. Ch. Nov.
9, 2021).

[38] Ford Smart Mobility, 2021 WL 5226487, at *2 (quoting Kalisman, 2013 WL
1668205, at *4-5 (Del. Ch. Apr. 17, 2013)).

[39] In re CBS Corp. Litig., 2018 WL 3414163, at *4 (Del. Ch. July 13,
2018).

[40] The defendants made a half-hearted argument at the motion to compel
hearing that adversity existed earlier because Lichtenstein received a
cease-and-desist letter from the Company’s non-executive directors in
September 2021. Gibson Dunn & Crutcher’s Mot. to Quash and for a
Protective Order and Pl.’s Mot. to Compel Hr’g Tr. May 3, 2022, at 38-39
(Dkt. 202); see Defs.’ Opp’n ¶ 6. The directive followed statements made
by Lichtenstein about a possible merger between the Company and Lockheed
Martin. Id. To the extent that letter created any form of adversity, that
adversity would only exist regarding the potential merger. See In re CBS,
2018 WL 3414163, at *7 (granting motion to compel “other than [with respect
to] the matters falling within” the specific subject of adversity).

[41] The defendants’ written responses to the plaintiffs’ document requests
include numerous relevance objections. Lichtenstein’s motion states that
it addresses only the “privilege objections” and that Lichtenstein
“reserves the right to challenge [defendants’] other meritless objections.”
 Mot. to Compel n. 2. The defendants’ opposition, however, argues that the
irrelevance of documents sought provides grounds to deny the motion. For
example, they argue that, because the proxy contest arose in early 2022,
documents from before October 13, 2021 are irrelevant. Defs.’ Opp’n ¶ 28.
To the extent that relevance is even a question before me, it bears
emphasizing that the scope of discovery is “broad and far-reaching.” Cal.
Pub. Emps. Ret. Sys. Coulter, 2004 WL 1238443, at *1 (Del. Ch. May 26,
2004) (quoting Pfizer, Inc. v. Warner-Lambert Co., 1999 WL 33236240, at *1
(Del. Ch. Dec. 8, 1999)). Documents from before October 13, 2021 that bear
on whether Company resources were misused to advance the interests of half
of the Board are sufficiently relevant.

[42] In re Howard Midstream Energy P’rs, LLC, 2021 WL 4314111 (Del. Ch.
Sept. 22, 2021).

[43] See SBC Interactive, Inc. v. Corp. Media P’rs, 1997 WL 770715, at *6
(Del. Ch. Dec. 9, 1997) (explaining that a director is normally “entitled
to equal access to legal advice furnished to the other board members”
unless her interests “come into conflict with the interests of the
corporation on a given issue” and “appropriate governance procedures” are
employed such that the director no longer has “a reasonable expectation
that [s]he was a client of the board’s counsel on a par with the remaining
directors”).

[44] See Kirby v. Kirby, 1987 WL 14862, at *7 (Del. Ch. July 29, 1987)
(“The directors are all responsible for the proper management of the
corporation, and it seems consistent with their joint obligations that they
be treated as the ‘joint client’ when legal advice is rendered to the
corporation through of its officers or directors.”); In re WeWork Litig.,
250 A.3d 901, 910 (Del. Ch. 2020) (“It is because ‘directors are
responsible for the proper management of the corporation’ that they should
‘be treated as a joint client when legal advice is rendered to the
corporation through one of its directors or officers.’” (quoting Kalisman,
2013 WL 1668205, at *4)); Kalisman, 2013 WL 1668205, at *4 (explaining that
a joint client “has a right of equal access to the materials he
seeks”—communications with a common interest between joint counsel and
other joint clients—“in light of his status as a joint client of the
subpoenaed law firms”). When former co-clients become adverse and “sue one
another, the default rule is that all communications made in the course of
the joint representation are discoverable.” In re Teleglobe Commc’ns
Corp., 493 F.3d 345, 366 (3d Cir. 2007) (applying Delaware law and citing
Delaware Rule of Evidence 502(d)(6)); see also In re Sutton, 1996 WL
659002, at *5 (Del. Super. Aug. 30, 1996) (describing Delaware Rule of
Evidence 502(b)(5) as “providing that where an attorney jointly represents
two clients who later become adversarial parties in litigation, one party
cannot assert attorney-client privilege to avoid disclosure of
communications which were made during the joint representation.”);
Restatement (Third) of the Law Governing Lawyers § 75(2) (Am. Law. Inst.
2022) (“Unless the co-clients have agreed otherwise, a communication [that
otherwise would be subject to attorney-client privilege] is not privileged
as between the co-clients in a subsequent adverse proceeding between
them.”).

[45] Hall v. Search Cap. Grp., Inc., 1996 WL 696921, at *2 (Del. Ch. Nov.
15, 1996) (explaining that management “cannot pick and choose which
directors will receive [which] information”); In re WeWork, 250 A.3d at 909
(same).

[46] 250 A.3d at 909.

[47] Id. (quoting Kalisman, 2013 WL 1668205, at *5); see id. at 911
(“[D]irectors of a Delaware corporation are presumptively entitled to
obtain the corporation’s privileged information as a joint client of the
corporation and any curtailment of that right cannot be imposed
unilaterally by corporate management untethered from the oversight and
ultimate authority of the corporation’s board of directors.”); Rainbow
Navigation, Inc. v. Yonge, 1988 WL 7389, at *1 (Del. Ch. Jan. 29, 1988)
(ordering production of privileged communications and documents to both
sides during the pendency of a dispute over who constituted the board).

[48] Dkt. 38 at 81.

[49] Ford Smart Mobility, 2021 WL 5226487, at *3; see Cole v. Wilm. Mat’ls,
Inc., 1993 WL 257415, at *1 (Del. Ch. July 1, 1993) (“It is elementary that
when they represent a corporation, lawyers represent the entity and do not
thereby represent any single corporate constituency.”); see generally Del.
Lawyers’ R. Prof’l. Conduct 1.13.

[50] Defs.’ Opp’n Ex. 1.

[51] Id.

[52] At oral argument, the defendants referred the court to Rainbow
Mountain, Inc. v. Begeman for the proposition that management could hire
corporate counsel without board approval. 2019 WL 6724420 (Del. Ch. Dec.
5, 2019). The outcome in that case depended on bylaws that explicitly gave
the corporation’s president that power, however, and no such argument has
been made here. Id. at *2; see also Del. Lawyers’ R. Prof’l. Conduct
1.13(e) (“A lawyer representing an organization may also represent any of
its directors, officers, employees, members, shareholders or other
constituents, subject to the provisions of Rule 1.7 [on conflicts of
interest]. If the organization’s consent to the dual representation is
required by Rule 1.7, the consent shall be given by an appropriate official
of the organization other than the individual who is to be represented, or
by the shareholders.”).

[53] D.R.E. 502(d)(6).

[54] This decision does not resolve Gibson Dunn’s Motion to Quash and For a
Protective Order, which will be addressed by the court separately. Dkt.
161.